UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVON R. M.,[1]<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ANDREW M. SAUL,<br><br>　　　　Defendant. | Case No. 18-cv-00387-TSH<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 21, 24 |

## I.　INTRODUCTION

Plaintiff Devon M. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Andrew M. Saul, the Commissioner of Social Security,[2] denying her claim for disability benefits. Pending before the Court are the parties' cross-motions for summary judgment. ECF Nos. 21 (Pl.'s Mot.), 24 (Def.'s Mot.). Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion for the following reasons.

## II.　BACKGROUND

**A.　Age, Education and Work Experience**

Plaintiff is 35 years old. AR 147. After completing high school, she finished a Montessori Teacher Training program in 2005 and completed three years of college. AR 162. From January

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] This action was originally brought against Acting Commissioner Nancy Berryhill. Pursuant to Fed. R. Civ. Proc. 25(d), Andrew M. Saul was automatically substituted as the Defendant.

of 2005 to October of 2013, she worked as an Assistant Administrator at a pre-school. *Id.*

**B.     Medical Evidence**

Plaintiff filed her initial claim for disability due to the following alleged illnesses, injuries, or chronic conditions: subluxation/diastasis of pubic symphysis, chronic pain, bipolar I, panic disorder with agoraphobia, generalized anxiety disorder, and ADHD.  AR 64.

**1.     Dr. Okuzumi**

On August 27, 2014, Gwendolyn Claire Okuzumi, M.D., treated Plaintiff for postpartum distasis symphysis at Kaiser Permanente-San Jose.  AR 2752-56.  In her treatment notes she noted that Plaintiff needed to lose weight and continue physical therapy exercises to improve her condition.  AR 2756.  Dr. Okuzumi saw Plaintiff again on September 17, 2014 for arm pain and cervical radiculopathy.  AR 2773-77.  She referred her to the spine clinic for evaluation.  AR 2777.  The results showed that her cervical cord demonstrated normal signal intensity and morphology and she had no cerebellar tonsillar ectopia.  AR 2782.  Overall, Plaintiff's spinal test showed "normal cervical spinal cord."  *Id.*

**2.     Dr. Follmar**

Keith Elliott Follmar, M.D., saw Plaintiff on September 30, 2014 for "left hand numbness."  AR 2801.  He instructed her to wear an elbow extension towel seven nights a week, to get a wrist cock-up splint, hand therapy for nerve gliding exercises, and to follow up within two to three months.  AR 2805.

On April 13, 2015, under Dr. Follmar's supervision, Plaintiff had surgery on her left ulnar nerve at the elbow.  AR 3113.  Dr. Follmar then ordered an EMG study to be conducted by Mohammad Hassan Mousavian, M.D., which showed "no electrodiagnostic evidence of carpal tunnel syndrome."  AR 3462.  Dr. Follmar saw Plaintiff again on October 15, 2015, and found her to have full ulnar and medial nerve functioning.  AR 3499.  Further, he noted that "she remains very pleased with her symptomatic relief from this surgery, although she does still have occasional symptoms of numbness and tingling, mainly in her left small finger."  *Id.*

### 3. Dr. Aquino-Caro's Opinion

State Agency Physician E. Aquino-Caro, M.D., reviewed Plaintiff's medical records through September 17, 2014. AR 68, 71-72. The medical records Dr. Aquino-Caro reviewed pertained to plaintiff's treatment at Kaiser Permanent-Santa Clara and Kaiser Permanente-San Jose. AR 65-66. At both hospitals she was seen for depression, bipolar disorder, anxiety, ADHD, pregnancy, examination of nerve in arm and pubic symphysis separation. AR 245-616. Additionally, because she delivered her twins at Kaiser Permanente-Santa Clara, the records also pertain to her delivery of her twins, AR 617-889, and post-labor complications. AR 890-1265.

Dr. Aquino-Caro found Plaintiff was not significantly limited in her ability to carry out very short and simple instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. AR 68, 71-72. However, she did note that Plaintiff had moderate limitations in carrying out detailed instructions. AR 71. She opined that based on the record, Plaintiff would be able to perform simple, routine tasks, but would be moderately limited in her ability to understand and remember. *Id.*

### 4. Dr. Kiger's Opinion

State Agency Physician L. Kiger, M.D., also reviewed Plaintiff's medical records. AR 67, 69-74. He opined on October 6, 2014, that Plaintiff would be limited to sedentary work. AR 73. Further, he stated that while her condition resulted in some limitations to Plaintiff's ability to perform work related activities and that she may not return to performing work she did in the past, she would be able to perform work that is less demanding. AR 74. He wrote that her condition was not severe enough to keep her from working. *Id.*

### 5. Dr. Garcia's Opinion

State Agency Physician A. Garcia, M.D., reviewed Plaintiff's medical records through

February 2, 2015. AR 81-85. Dr. Garcia found Plaintiff was not significantly limited in her ability to carry out very short and simple instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and in carrying out detailed instructions. AR 84-85. Dr. Garcia opined Plaintiff could perform simple, repetitive tasks and sustain concentration, persistence, and pace. AR 84.

### 6. Dr. Bonal's Opinion

Kathleen Bonal, Ph.D., treated Plaintiff since at least November 12, 2013 to June 7, 2016. AR 1266-85, 3818-34, 3839-42, 3858-75, 3878-83, 3896-3923, 3932-35, 3942-50, 3960-65, 3983-4010, 4019-24, 4047-51, 4056-63, 4068-73, 4083-87, 4107-14, 4120-24, 4138-43, 4146-51, 4185-96. She completed a medical source statement in July of 2016, in which she opined that Plaintiff's impairments included bipolar disorder, panic disorder, and attention deficit hyperactivity disorder. AR 3810-13.

In her medical source statement, Dr. Bonal noted Plaintiff had panic attacks up to one to two times a day and opined these panic attacks would likely affect her ability to concentrate. AR 3810. She also wrote that Plaintiff could be expected to have mood changes lasting one to two months or more, with hypomanic episodes lasting several days to over a week. *Id.* She also stated stress could trigger anxiety and panic and worsen depression or trigger hypomania, and lack of sleep could also trigger hypomania. AR 3811. Further, she added that Plaintiff's symptoms included depression, loss of interest in activities, easy distractibility, decreased energy, thoughts of suicide, sleep disturbance, problems interacting with the public, and difficulty with concentration. *Id.* Additionally, she opined Plaintiff's symptoms were frequently (defined as up to two thirds of the work day) severe enough to interfere with the attention and concentration needed to perform even simple tasks. *Id.* She noted that Plaintiff attended a weekly treatment group and therapy

4

every three to six weeks. *Id.* Overall, Dr. Bonal wrote Plaintiff had a good prognosis, had been stable in the past with less stress and treatment and that the "[p]anic attacks and anxiety are expected to improve." AR 3812.

### III. SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

On July 15, 2014, Plaintiff filed a claim for Disability Insurance Benefits, alleging disability beginning on November 1, 2013. AR 147-48. On October 9, 2014, the Social Security Administration ("SSA") denied Plaintiff's claim, finding Plaintiff did not qualify for disability benefits. AR 64-74. Plaintiff subsequently filed a request for reconsideration, which was denied on February 19, 2015. AR 76-87. On April 13, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 100. ALJ Thomas Gaye conducted a hearing on August 4, 2016. AR 39-63. Plaintiff testified in person at the hearing and was represented by counsel, Harvey P. Sackett. The ALJ also heard testimony from Vocational Expert Thomas G. Linvill.

### A. Plaintiff's Testimony

At the hearing on August 4, 2016, Plaintiff testified that she was unable to work due to extreme daily pain from a pelvic separation after giving birth to her twins and because of several mental health issues, including anxiety and panic disorder, bipolar disorder, and agoraphobia. AR 45.

Plaintiff testified that she drove her children to school, daycare, and camp and picked them up. *Id*. She testified that she gave her kids meals when they were home. *Id.* She testified that she had sudden panic attacks that "come out of nowhere," for example, she could have a panic attack from watching her children for more than an hour. *Id*. Plaintiff also has panic attacks if she gets stuck in traffic and sometimes has to pull over until they pass. AR 46. She had bipolar disorder before her twins were born, but it was relatively stable then. AR 50. She said that after the twins were born, she stopped taking medication and experienced psychosis. *Id.* She resumed taking medication thereafter. *Id.* She cannot pick up her toddler children because they each weigh 30 pounds. AR 47-48.

Plaintiff is unable to sit for more than 30 to 45 minutes because of her pelvic pain. AR 51. Plaintiff testified that if she sat for 30 to 45 minutes, her knees became stiff and she had problems

standing up. *Id.* She stated her pelvis "feels like it's off kilter," and her "back is usually in a lot of pain." *Id.* She could not sustain work activity even with changes of position throughout the day because there is no comfortable position for her. AR 53.

## B. Vocational Expert's Testimony

The ALJ called Thomas Linville to testify as a vocational expert ("VE") at the hearing. The ALJ asked the VE to consider an individual able to perform light work, but limited to 4 hours of standing and walking in an 8-hour day, able to perform postural maneuvers occasionally, frequently able to reach overhead bilaterally, and limited to simple, repetitive tasks. AR 56-57. In response, the VE identified the sedentary occupations of document preparer (DOT[3] # 249.587-018) and addresser (DOT # 209.587-010) and the light occupation of inspector/hand packager (DOT # 559.687-074), clarifying that some of the jobs in that category could be performed at the sedentary level. AR 57-58. The VE acknowledged that each of the identified occupations requires at least frequent reaching, handling, and fingering. AR 58. The VE also acknowledged that a need to sit or stand at will would eliminate the ability to perform the identified jobs. AR 59. A person who would be off task for 15 percent or more of the work day would not be able to sustain competitive employment. *Id.*

## C. ALJ's Decision and Plaintiff's Appeal

On September 20, 2016, the ALJ issued an unfavorable decision finding Plaintiff was not disabled. AR 18-33. This decision became final when the Appeals Council declined to review it on November 24, 2017. AR 1. Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).

## IV. STANDARD OF REVIEW

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42

---

[3] The Dictionary of Occupational Titles ("DOT") by the United States Department of Labor, Employment & Training Administration, may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d) (1). The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles." *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001).

6

U.S.C. § 405(g). An ALJ's decision to deny benefits must be set aside only when it is "based on legal error or not supported by substantial evidence in the record." *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It requires "more than a mere scintilla," but "less than a preponderance" of the evidence. *Id.*; *Trevizo*, 871 F.3d at 674.

The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo*, 871 F.3d at 675 (citation and quotation marks omitted). However, "[w]here evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* (citation and quotation marks omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (citation and quotation marks omitted).

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Id.* (citation and quotation marks omitted). A court may not reverse an ALJ's decision because of a harmless error. *Id.* at 1111 (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Id.* (citation and quotation marks omitted).

## V. DISCUSSION

### A. Framework for Determining Whether a Claimant Is Disabled

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.[4] 20 C.F.R. §

---

[4] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a

7

404.1520. The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990). During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work." *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i), (b). Here, the ALJ determined Plaintiff had not performed substantial gainful activity since November 1, 2013, the alleged onset date. AR 20.

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act. 20 C.F.R. § 404.1520(a)(4)(ii). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined Plaintiff had the following severe impairments: disorders of muscle, ligament and fascia; obesity; and affective disorders. AR 20.

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (the "Listing of Impairments"). 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, she is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 21.

Before proceeding to step four, the ALJ must determine the claimant's Residual Function

---

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms. 20 C.F.R. § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all the claimant's medically determinable impairments, including the medically determinable impairments that are nonsevere. 20 C.F.R. § 404.1545(e). Here, the ALJ determined Plaintiff has the RFC to perform "sedentary work as defined in 20 CFR 404.1567(a) except: she can stand and/or walk a total of four hours in an eight-hour workday. She can occasionally climb ramps and stairs and climb ladders, ropes, and scaffolds. She can occasionally balance, kneel, crouch, and crawl. The claimant can frequently perform overhead reaching bilaterally. She can perform simple, repetitive tasks." AR 23.

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f). Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4) (iv). Here, the ALJ determined Plaintiff could not perform past relevant work. AR 31.

In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g); 404.1560(c). The Commissioner can meet this burden by relying on the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, Subpt. P, App. 2. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). Here, the ALJ found Plaintiff could perform the occupations of document preparer (DOT # 249.587-018), addresser (DOT # 209.587-010), and inspector/hand packager (DOT # 559.687-074). AR 32.

**B. Plaintiff's Arguments**

Plaintiff posits four errors on the part of the ALJ: (1) that the ALJ improperly rejected the

9

opinion of Plaintiff's treating doctor and critical portions of the opinion of one of the state agency reviewing doctors; (2) that the ALJ improperly rejected Plaintiff's testimony; (3) that the ALJ improperly rejected the lay witness opinion provided by her husband; and (4) that the ALJ's step-five finding is not supported by substantial evidence. Pl.'s Mot. at 2. The Court considers each argument in turn.

### C. Medical Opinions[5]

In his decision, the ALJ noted that though Plaintiff received a diagnosis for bipolar disorder and for anxiety disorder, hospital records showed generally appropriate mood and affect. AR 27. He assigned "some weight to" Dr. Bonal's opinion but noted that it "appears to overestimate the claimant's work-related limitations at times" because multiple mental status examinations showed generally normal findings. AR 29-30. Additionally, the ALJ assigned "some weight" to Dr. Aquino-Caro's opinion, finding it was "internally consistent and well supported by a reasonable explanation and the available evidence." AR 29.

Plaintiff argues that the ALJ was misguided in comparing Dr. Bonal's opinion that Plaintiff's symptoms would frequently interfere with her ability to concentrate on work activity to mental status examinations showing normal memory and an organized and goal-directed thought process. Pl.'s Mot. at 5. Plaintiff argues this is improper because if she was not actively in the midst of a panic attack during Dr. Bonal's examination, then it would make sense she had organized thoughts and a normal memory at that moment. *Id.* at 6 According to Plaintiff, the ALJ did not provide clear and convincing reasons for discounting Dr. Bonal's opinion, which, if properly credited, would establish that she cannot sustain the concentration required for full-time work and is disabled. *Id.* Further, Plaintiff argues that the ALJ was mistaken in excluding state agency reviewing psychologist Dr. Aquino-Caro's opinion assessing a moderate limitation in Plaintiff's ability to understand, remember, and carry out detailed tasks from his RFC findings. *Id.*

---

[5] Rules regarding the evaluation of medical opinion evidence were recently updated, but the updates were made effective only for claims filed on or after March 27, 2017. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017). As Plaintiff's claim was filed on July 15, 2014, the Court evaluates the medical opinion evidence in his case under the older framework as set forth in 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) and in Social Security Ruling 96-2p.

10

Defendant argues that Plaintiff's argument fails because it does not identify a concrete functional limitation the ALJ should have included in Plaintiff's RFC. Def.'s Mot. at 1. Though Dr. Bonal submitted a form that identifies diagnoses such as bipolar disorder and panic disorder, according to the Defendant, neither these diagnoses nor symptoms translated into specific deficits beyond Plaintiff's RFC. *Id.* As to Dr. Acquino-Caro, Defendant argues that to the extent she assessed limitations beyond Plaintiff's RFC the ALJ was not required to adopt Dr. Acquino-Caro's findings wholesale. *Id.* at 5.

### 1. Legal Standard

When determining whether a claimant is disabled, the ALJ must consider each medical opinion in the record together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b); *King v. Berryhill*, 2018 WL 4586726, at *11 (N.D. Cal. Sept. 25, 2018). In deciding how much weight to give to any medical opinion, the ALJ considers the extent to which the medical source presents relevant evidence to support the opinion. 20 C.F.R. § 416.927(c)(3). Generally, more weight will be given to an opinion that is supported by medical signs and laboratory findings, and the degree to which the opinion provides supporting explanations and is consistent with the record as a whole. 20 C.F.R. § 416.927(c)(3)-(4).

In conjunction with the relevant regulations, the Ninth Circuit "developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527). Courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "By rule, the Social Security Administration [SSA] favors the opinion of a treating physician over non-treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527). If a claimant has a treatment relationship with a provider, and clinical evidence supports that provider's opinion and is consistent with the record, the provider will be given controlling weight. 20 C.F.R. § 416.927(c)(2). "The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and

11

observe the patient as an individual.'" *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).

"If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the [SSA] considers specified factors in determining the weight it will be given." *Orn*, 495 F.3d at 631. "Those factors include the '[l]ength of the treatment relationship and the frequency of examination' by the treating physician; and the 'nature and extent of the treatment relationship' between the patient and the treating physician." *Id.* (citing 20 C.F.R. § 404.1527(d)(2)(i)-(ii)).

> Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the [Social Security] Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record.

*Id.* (citing 20 C.F.R. § 404.1527(d)(3)-(6)). Nonetheless, even if the treating physician's opinion is not entitled to controlling weight, it is still entitled to deference. *See id.* at 632 (citing SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996)).[6] "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p at *4.

**2. Analysis**

Here, the Court finds the ALJ gave sufficient reasons for giving certain opinions of Dr. Bonal little weight. As Defendant notes, 42 U.S.C. § 1382c(a)(3)(A) defines a "disability" as "[inability] to engage in any substantial gainful activity . . . for a continuous period of not less than twelve months." Thus, the ALJ properly considered the situational and temporary nature of Plaintiff's symptoms throughout her treatment with Dr. Bonal. *Chesler v. Colvin*, 649 Fed. App'x.

---

[6] "[Social Security Rulings] do not carry the force of law, but they are binding on ALJs nonetheless." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see* 20 C.F.R. § 402.35(b)(1). The Ninth Circuit defers to the rulings unless they are "plainly erroneous or inconsistent with the Act or regulations." *Chavez v. Dep't of Health and Human Serv.*, 103 F.3d 849, 851 (9th Cir. 1996).

361, 362 (9th Cir. 2016) (finding ALJ properly considered mental-health symptoms were situational" and "unlikely to persist once [the claimant's] circumstances improved"). Dr. Bonal herself explained Plaintiff experienced an increase in symptoms due to temporary life stressors. AR 29, 31, 1279; *see* 42 U.S.C. § 1382c(a)(3)(A) (defining a "disability" as "[inability] to engage in any substantial gainful activity . . . for a continuous period of not less than twelve months").

In particular, Plaintiff experienced "situational stressors" with her stepmother and her father throughout a physically difficult pregnancy and birth of her twin children. AR 31, 1279. Following Plaintiff's giving birth to twins, Dr. Bonal noted a "worsening of symptoms in response to environmental stressors" and noted, "[Plaintiff] is not currently taking psychiatric medication." AR 1279. Two years later, Dr. Bonal stated Plaintiff's prognosis was "[g]ood" and explained Plaintiff's "[m]ood ha[d] been stable in the past with less stress & with treatment" and that "[p]anic attacks & anxiety were expected to improve." AR 3812. The ALJ properly weighed the efficacy of Plaintiff's treatment when compliant. AR 30–31, 1279, 3812; *see* 20 C.F.R. §404.1527(c)(ii)(6).

The ALJ noted mental-status exams showing generally normal findings. AR 30, *see, e.g.,* AR 1267, 1274, 4193. For example, on June 7, 2016, Plaintiff's mood appeared anxious and depressed and she appeared to ruminate a bit, but she remained pleasant and cooperative; exhibited normal behavior, speech, and orientation; and had a full range of affect, organized and goal-directed thought content, a normal fund of knowledge, normal memory, fair judgment, and good insight. AR 30, 4193. On November 12, 2013, despite mood-related symptoms, Plaintiff again displayed a largely normal range of mental functioning consistent with the narrow range of unskilled work in her RFC. AR 30, 1267. Among other normal findings, her speech was clear and coherent, affect was appropriate, thought process was within normal limits, insight was good, judgment was good, and there was no evidence of suicidal, homicidal, or paranoid ideations. AR 30, 1267. Similarly, on November 26, 2016, Plaintiff was sad and upset but nonetheless presented as pleasant and cooperative, had normal behavior, full and appropriate affect, normal thought processes, normal thought content, normal orientation, normal attention, normal memory, normal fund of knowledge, good insight, and good judgment. AR 28, 1274.

Plaintiff's argument regarding Dr. Aquino-Caro's opinion also falls short. Consistent with the ALJ's RFC finding, Dr. Acquino-Caro expressly found Plaintiff could perform simple repetitive tasks. AR 71 ("Can perform SRT"). Even if Dr. Acquino-Caro assessed limitations beyond Plaintiff's RFC—which Dr. Acquino-Caro did not—the ALJ was not required to adopt Dr. Acquino-Caro's findings. *See* 20 C.F.R. § 404.1546(c) (ALJ is responsible for assessing RFC); *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) (holding ALJ need not agree with everything contained in a medical opinion and can consider some portions less significant than others when evaluated against the other evidence of record). The ALJ attributed "some weight" to Dr. Acquino-Caro's findings, to the "extent consistent with" Plaintiff's RFC, and explained how the medical evidence, the situational nature of Plaintiff's symptoms, and the efficacy of Plaintiff's treatment undermined additional limitations. AR 27–31. Accordingly, the ALJ's decision must be affirmed.

### D. Plaintiff's Credibility

The ALJ stated that he found the claimant's allegations "not entirely consistent with the medical record" and that "[o]bjective diagnostic image fail to reflect her subjective complaints." AR 30. Further, he noted that despite her allegations of disabling symptoms and limitations, she described taking care of her children, such as dressing them and driving them to and from day care, visiting her parents and her in-laws, and preparing meals for herself and her family. *Id.* Plaintiff argues that the ALJ improperly singled out "a few periods of temporary well-being from a sustained period of impairment" in an attempt to discredit Plaintiff. Pl.'s Mot. at 8. Defendant argues that the ALJ properly identified Plaintiff's pertinent statements, set forth specific and legitimate reasons explaining how he weighed them, and identified substantial evidence in the record underlying his findings. Def.'s Mot. at 5.

#### 1. Legal Standard

Congress expressly prohibits granting disability benefits based solely on a claimant's subjective complaints. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability"); 20 C.F.R. § 416.929(a) (an ALJ will consider all of a claimant's statements about symptoms, including pain, but statements

14

about pain or other symptoms "will not alone establish" the claimant's disability). "An ALJ cannot be required to believe every allegation of [disability], or else disability benefits would be available for the asking, a result plainly contrary to [the Social Security Act]." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). An ALJ is, however, required to make specific credibility findings. *See* SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) (the credibility finding "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight").

A two-step analysis is used when determining whether a claimant's testimony regarding their subjective pain or symptoms is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, it must be determined "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc); 42 U.S.C. § 423(d)(5)(A)). A claimant does not need to "show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).

Second, if the claimant has met the first step and "there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* (quoting *Smolen*, 80 F.3d at 1281). "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. Courts must not engage in second-guessing, where the ALJ "has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record." *Fair*, 885 F.2d at 604. However, "a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citing *Lester*, 81 F.3d at 834).

Factors an ALJ may consider in weighing a claimant's credibility include: "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [his]

testimony and [his] conduct, claimant's daily activities, [his] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (quoting *Light*, 119 F.3d at 792). An ALJ's credibility finding must be properly supported by the record, and sufficiently specific to ensure a reviewing court he did not "arbitrarily discredit" a claimant's subjective testimony. *Id.* at 958 (citing *Bunnell*, 947 F.2d at 345-46).

### 2. Analysis

Here, the Court finds the ALJ's credibility finding is supported by the record. First, the ALJ assessed that the medical evidence did not corroborate Plaintiff's allegations of extreme limitations, such as frequent falls, imbalances, knee stiffness, and difficulty lifting, squatting, standing, walking, sitting, and kneeling. AR 24–25; *Knorr v. Berryhill*, 254 F. Supp. 3d 1196 (C.D. Cal. 2017) ("In evaluating the credibility of a claimant's subjective symptom testimony, an ALJ in a social security disability benefits case should consider observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptoms, precipitating and aggravating factors, functional restrictions caused by the symptoms, and the claimant's daily activities.").

Second, the ALJ noted in support of his decision that the medical evidence showed Plaintiff's symptoms improved with treatment. AR 24-26, *see, e.g.,* AR 3499; 20 C.F.R. §§ 404.1529(c)(3)(iv). For example, Plaintiff alleged disability based on carpal tunnel syndrome (CTS) due to nerve pain and numbness, which she claimed caused her to frequently drop items and prevented her from typing, carrying large objects, lifting, and performing basic arm and hand movements. AR 26, 175–89. However, she underwent a nerve decompression surgery for CTS and subsequent testing showed "no measurable evidence of nerve compression at the wrist, elbow, or the thoracic outlet." AR 3499. On examination at Kaiser Permanente Dr. Follmar found full ulnar and medial nerve functioning. AR 3499. An EMG study ordered by Dr. Follmar and conducted by Mohammad Hassan Mousavian, M.D., showed "no electrodiagnostic evidence of carpal tunnel syndrome. AR 3462. Plaintiff, "remain[ed] very pleased with her symptomatic relief from this surgery" and reported only occasional symptoms of numbness and tingling in her

small left finger. AR 26, 3499. The ALJ properly considered the efficacy of Plaintiff's treatment, and Plaintiff does not assert otherwise. *See Lenhart v. Astrue*, 252 Fed. App'x. 787, 789 (9th Cir. 2007) (affirming discounting of claimant's subjective complaints where CTS surgery was generally successful in relieving symptoms).

Additionally, the ALJ appropriately found Plaintiff's activities of daily living contradicted some of her testimony. AR 30-31; *see* 20 C.F.R. § 404.1529(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence."). For example, while Plaintiff claimed nerve pain and numbness caused her to frequently drop things and prevented her from performing basic arm and hand movements, on August 27, 2014, she told Dr. Okuzumi she had not been dropping things as much and had started crocheting again. AR 24, 27, 31, 2756. Although Plaintiff claimed disability due to agoraphobia, a progress note revealed she attended a Halloween parade on October 30, 2015. AR 31, 3507. While she stated she could not walk for long periods of time, on November 18, 2014, she told Dr. Bonal she started walking every other day and was able to walk for one mile. AR 26–27, 2689. Plaintiff, who asserts only that the ALJ relied on a "few periods of temporary wellbeing," fails to establish reversible error in the ALJ's conclusion her activities of daily living conflicted with Plaintiff's reports. Accordingly, the ALJ's decision is affirmed.

### E. Lay Witness Opinion

The ALJ accorded some weight to the opinion provided by the Plaintiff's husband. AR 29. The ALJ wrote that because the lay witness was not medically trained to make exacting observation as to dates, frequencies, types and degrees of medical signs and symptoms or of the frequency or intensity of unusual moods or mannerisms, significant weight could not be accorded to his statements. *Id.* Furthermore, the ALJ noted that the medical record supports greater work related abilities within the parameters of the RFC than what Plaintiff's husband described. *Id.*

Plaintiff argues that ALJ improperly rejected the lay witness questionnaire filled out by her husband. Pl.'s Mot. at 110 Specifically, Plaintiff argues that the ALJ failed to give specific and legitimate reasons germane to the lay witness for rejecting his testimony and that this was

17

reversible error. *Id.* at 10-11 Defendant argues that because the lay witness's statements were duplicative of Plaintiff's own, the ALJ's reasoning for rejecting her testimony applies to the lay witness's testimony as well. Def.'s Mot. at 6. Further, Defendant argues that the ALJ specifically addressed the lay witness's opinion and properly concluded that the statements did not translate into concrete work-related functional limitations. *Id.* at 8.

### 1. Legal Standard

Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must consider. *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996). Competent lay witness testimony "*cannot* be disregarded without comment," *Nguyen,* 100 F.3d at 1467, and in order to discount competent lay witness testimony, the ALJ "must give reasons that are germane to each witness." *Dodrill v. Shalala,* 12 F.3d 915, 919 (9th Cir. 1993).

### 2. Analysis

In this instance, the ALJ provided germane reasons for affording little weight to Plaintiff's husband's opinion. His reason that the lay opinion was duplicative of Plaintiff's testimony, and thus also contradicted by medical evidence and medical opinions, was a valid cross-application of his reasoning for questioning Plaintiff's credibility. The ALJ is not required to discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness. *See Valentine v. Comm'r of Soc. Sec. Admin.,* 574 F.3d 685, 694 (9th Cir. 2009) (holding that because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony"). In this instance, the ALJ did just that by pointing to the lack of support in the medical evidence and opinions for Plaintiff's testimony, reflected also in her husband's statements. Accordingly, the ALJ provided sufficient reasons for affording little weight to Plaintiff's husband's opinion.

18

### F. Step-Five Findings

At Step-Five, the ALJ found that Plaintiff could perform the occupations of document preparer (DOT # 249.587-018), addresser (DOT # 209.587-010), and inspector/hand packager (DOT # 559.687- 074). AR 32. Plaintiff argues that according to the DOT, the occupation of inspector/hand packager is a light occupation, which does not fit within the ALJ's RFC finding allowing for a limited range of sedentary work. Pl.'s Mot. at 11. Thus, Plaintiff argues this job must be eliminated based on the exertional level. *Id.* at 12. Further, Plaintiff argues that even if this job category is not eliminated for exertion reasons, it should be removed because each of the jobs identified has a GED reasoning level of 2 or 3 whereas Dr. Aquino-Caro identified Plaintiff as having a moderate limitation in her ability to understand, remember, and carry out detailed tasks, which suits GED reasoning level 1. *Id.*

Defendant argues that Plaintiff has not established reversible error in the ALJ's finding that Plaintiff could perform work existing in significant numbers in the national economy. Def.'s Mot. at 9. Defendant proffers that though the inspector hand packager job may be outside of Plaintiff's abilities, the ALJ's determination is only harmless error because he identified two other DOT categories which are within Plaintiff's scope. *Id.* at 8. Further, Defendant argues that Plaintiff rests her position that she could not perform the work of document preparer and addresser based on the erroneous argument that her RFC determination is incorrect. *Id.*

As a threshold matter, Plaintiff rests her argument on the proposition that her RFC should have been for "simple, routine tasks but not detailed tasks," yet the ALJ assessed an RFC for "simple, repetitive tasks." AR 23. This RFC does not conflict with Dr. Aquino-Caro's opinion that Plaintiff was moderately limited in her ability to understand and remember detailed instructions because when asked to explain Plaintiff's capacities and limitations in that regard, Dr. Aquino-Caro stated that Plaintiff can perform simple, repetitive tasks, AR 71, which is the RFC the ALJ assessed. AR 23. Plaintiff's RFC for simple, repetitive tasks does not conflict with the document preparer or addresser jobs, both reasoning level two jobs. *See Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) (RFC for simple, repetitive tasks includes level two jobs). Because Plaintiff fails to show she could not perform the document preparer and addresser jobs, the Court

19

need not consider the document preparer (scanner) job. *See Mitchell v. Colvin*, 584 F. App'x 309, 312 (9th Cir. 2014) (ALJ's error in finding Plaintiff capable of performing three jobs when two of them were semi-skilled was harmless because the one which did comport with his limitations offered a sufficient number of positions regionally and nationally). Thus, the ALJ's decision is affirmed.

## VI. CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion. The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: August 5, 2019

_____
THOMAS S. HIXSON
United States Magistrate Judge